Richard W. STRANG, et al., Plaintiffs,

v.

JHM MORTGAGE SECURITIES LIMITED PARTNERSHIP, et al., Defendants.

Civ. A. No. 95–94–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

June 8, 1995.

Lynn Ellen Berry, Ryan Associates, P.C., Arlington, VA, James C. Krause, Krause & Kalfayan, Michael J. Aguirre, Aguirre & Meyer, San Diego, CA, Patricia Dorothy Ryan, Ryan Associates, P.C., Arlington, VA, for Richard W. Strang.

Stephen M. Colangelo, McGuire, Woods, Battle & Boothe, Alexandria, VA, Robert R. Vieth, McGuire, Woods, Battle & Boothe, McLean, VA, Norman J. Blears, Heller, Ehrman, White & McAuliffe, Palo Alto, CA, for JHM Mortg. Securities L.P., et al.

Stephen M. Colangelo, McGuire, Woods, Battle & Boothe, Alexandria, VA, Robert R. Vieth, McGuire, Woods, Battle & Boothe, McLean, VA, Eugene Scalia, F. Joseph Warin, Gibson, Dunn & Crutcher, Washington, DC, Norman J. Blears, Heller, Ehrman, White & McAuliffe, Palo Alto, CA, for JHM Mortg. Capital Corp.

Anthony John Trenga, Hazel & Thomas, P.C., Alexandria, VA, Kenneth G. Hausman, Howard, Rice, Nemerovski, Canady, Robertson, Falk & Rabkin, San Francisco, CA, for John Hancock Freedom Securities Corp.

James B. Deerin, McLean, VA, for JHM Capital Corp.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

### I.

This matter is before the Court on Plaintiffs' Motion for Approval of the Settlement Agreement between Plaintiffs, Richard W. Strang and the class of similarly situated plaintiffs, and Defendants, JHM Mortgage Securities Limited Partnership, et al. Additionally, Plaintiffs' Counsel have moved this Court for an award of attorneys' fees and costs from the common settlement fund.

The facts of this case, which involves complex issues relating to mortgage backed derivative securities and related securities issues, will be summarized briefly. This is a class action against JHM Mortgage Securities Limited Partnership (JHM L.P.), JHM L.P.'s general partner JHM Mortgage Capital Corporation, JHM Capital Corporation and John Hancock Freedom Securities Corporation, and the officers and directors of JHM L.P.: Stephen P. Gavula (Chief Executive Officer), C. Thomas Williamson, III (President and Chief Operation Officer), and William P. Callan (Chief Investment Officer). These claims were brought on behalf of all persons who purchased Preferred Units of

JHM L.P. (the "Class"[1]) from November 1, 1991 through and including August 16, 1994 (the "Class Period"), and who suffered damages thereby.

According to Plaintiffs, Defendants caused JHM L.P. to publicly issue false and misleading financial statements and other false statements in annual and quarterly reports to Preferred Unit purchasers, in press releases and in public filings with the Securities and Exchange Commission, during the Class Period. This information was misleading with regard to JHM L.P.'s financial stability, including: the safety of the investment; the availability of hedges to protect JHM L.P.'s assets; the status of its operations, investments and financial results; its true losses; the value of its holdings; and its future business prospects. Plaintiffs aver that the statements provided by Defendants were materially false and misleading when issued and had the purpose and effect of artificially inflating the market price of JHM L.P.'s Preferred Units. Subsequent disclosures of JHM L.P.'s true financial problems allegedly undermined the value of the Preferred Units, injuring the Class members.

On August 5, 1994, Plaintiffs brought this action pursuant to §§ 10(b) and 20(a) of the 1934 Securities Exchange Act, 15 U.S.C. 78j(b) and 78t(a), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. On February 17, 1995, the parties negotiated a stipulation of settlement of the class action. Plaintiffs' Motion for Approval of the Settlement Agreement is considered below.

## II.

■ Unlike other civil actions, the dismissal or settlement of a class action lawsuit requires the approval of the Court after notice to all members of the class.[2] Fed. R.Civ.P. 23(e). The approval of a proposed settlement agreement is in the sound discretion of the Court. *In re Jiffy Lube Sec. Lit.,* 927 F.2d 155, 158 (4th Cir.1991). In exercising this discretion, the Court must consider factors relevant to determining the fairness and adequacy of the proposed compromise. *Id.* at 158–59. To determine the "fairness" of a settlement agreement, the Court must consider:

1. the posture of the case at the time of settlement;

2. the extent of discovery that had been conducted;

3. the circumstances surrounding the negotiations; and

4. the experience of counsel in the area of securities class action litigation.

*Id.* If the settlement is found to meet these "fairness" criteria, the Court must then review the "adequacy" of the settlement, including:

1. the relative strength of the plaintiffs' case on the merits;

2. the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial;

3. the anticipated duration and expense of additional litigation;

4. the solvency of the defendants and the likelihood of recovery on a litigated judgment; and

5. the degree of opposition to the settlement.

*Id.* As discussed briefly below, the Court finds the Settlement Agreement both fair and adequate under the *Jiffy Lube* factors.

The Court is satisfied that the Settlement Agreement meets the "fairness" criteria set out in *Jiffy Lube.* Although the settlement comes at an early stage in the litigation, even prior to the initiation of formal discovery, the Court finds that Plaintiffs have conducted sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations. Further, the Court is persuaded that Plaintiffs' counsel, with their wealth of experience and knowledge in the securities-class

---

1. By order dated March 3, 1995, the Court approved the creation of the class forming this class action.

2. In accordance with the Court's March 3, 1995 Order, Plaintiffs mailed 9,262 Notices and Proofs of Claim forms to all identified class members, potential class members and nominees. Additionally, notice was published in a national edition of *The Wall Street Journal* on March 17, 1995.

action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class. Thus, the Settlement Agreement meets the "fairness" criteria of *Jiffy Lube*.

Approval of the Settlement Agreement is also contingent on the "adequacy" of the settlement. *Jiffy Lube*, 927 F.2d at 159. Again, the Court is satisfied that the settlement is adequate under the *Jiffy Lube* factors. By Plaintiffs' own admission, the strength of their case is severely undermined by the difficulty of proving liability at trial. In addition to the difficulties of prevailing at trial, the substantial expense Plaintiffs would face in proceeding with this case favors settlement at this time. Finally, the class response supports settlement—not a single class member has objected to the Settlement Agreement and only a small number have opted-out.[3]

The Court concludes that the Settlement Agreement is both fair and adequate under the *Jiffy Lube* criteria. Accordingly, Plaintiffs' Motion for Approval of the Settlement Agreement is GRANTED.

### III.

The law firms of Krause & Kalfayan; Finkelstein, Thompson & Loughran; Aguirre & Meyer; and Ryan Associates, P.C. (hereinafter "Plaintiffs' Counsel"), which all worked on this litigation jointly on behalf of all class members, have filed a joint motion for an award of attorneys' fees and reimbursement of costs and expenses from the common settlement fund (the "Settlement Fund").[4] Plaintiffs' Counsel have requested a fee award in the amount of $345,000 and reimbursement of costs and expenses of $10,245.39. The requested attorneys' fees and reimbursements are considered separately, below.

### A. Attorneys' Fees

Plaintiffs' Counsel argues that, under either a percentage method or lodestar calculation of attorneys' fees, they should be awarded $345,000.00 for their representation of Plaintiffs in this matter. Plaintiffs' Counsel aver that the class action suit should be treated like a typical contingency fee arrangement, entitling them to a reasonable percentage of the Settlement Fund.[5] Alternatively, Plaintiffs' Counsel maintain that they are entitled to $345,000.00 under a lodestar-multiplier calculation.[6] While the Court finds the percentage method preferrable to the lodestar-multiplier calculation of attorneys' fees, the Court disagrees with the amount of attorneys' fees claimed by Plaintiffs' Counsel.

■ Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.[7] *See e.g. Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir.1993) (district court could use either method in awarding fees); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C.Cir.1993) (court has discretion to award fees as percentage of the fund); *Longden v. Sunderman*, 979 F.2d 1095, 1099 (5th Cir.1992) (affirming use of

---

**3.** Other than the fifty plaintiffs who have sued Defendants in a separate action, *see Allan G. Bortel, et al. v. JHM Mortgage Securities, L.P., et al.*, Civil Action No. 95–95–A (E.D.Va.1995), only nine class members had opted out as of April 20, 1995.

**4.** Pursuant to the terms of the Settlement Agreement, Defendants have deposited $1.15 million into a common settlement fund which will earn interest until distribution. Before the Settlement Fund is distributed to the class, it will be used to pay: notification and administration costs; taxes and related expenses on the interest earned by the Fund; and, to the extent allowed by the Court, counsels' fees and litigation expenses.

**5.** The $345,000.00 figure represents 30% of the $1.15 million Fund.

**6.** The $345,000.00 figure is reached by multiplying the total lodestar figure, which Plaintiffs represent to be $193,603.25, by a factor of 1.8.

**7.** In the award of attorneys' fees, the Fourth Circuit has endorsed the lodestar calculus outlined in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 (4th Cir.1978) (*citing Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). While the lodestar approach is still utilized in the Fourth Circuit, the Court feels that, in light of the great weight of authority endorsing the percentage method, a departure is warranted in this case.

percentage method to calculate attorneys' fees); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991) (percentage method is preferrable in common fund cases); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir.1991) (percentage method may be used in appropriate cases); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989) (fees may be awarded as a percentage of common funds); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.1988) (fee award as percentage of common fund not an abuse of discretion).[8] The courts in these cases have concluded that the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases. *See Camden I Condominium Ass'n Inc.*, 946 F.2d at 773; *Rawlings*, 9 F.3d at 516. The Court finds the reasoning of these cases persuasive and, therefore, will award Plaintiffs' Counsel's fees as a percentage of the common Settlement Fund.

██ Although Plaintiffs' Counsel have requested 30% of the Settlement Fund, the Court is not convinced that such a large award is reasonable or warranted. Even accepting Plaintiffs' Counsel's calculation of billables as reasonable and accurate, they have billed only $193,603.25. While the Court recognizes that Plaintiffs' Counsel should be rewarded for the risks they incurred in accepting Plaintiffs' case, the Court finds that these risks were minimalized by early settlement. Accordingly, the Court will award Plaintiffs' Counsel attorneys' fees in the amount of $287,500.00, reflecting 25% of the Settlement Fund, to be awarded from the Settlement Fund.

## B. Costs

In addition to attorneys' fees, Plaintiffs' Counsel seek to recover $10,245.39 in costs expended in the prosecution of this case. After review of the breakdown of litigation costs provided by Plaintiffs' Counsel, the Court concludes that $10,245.39 reflects a reasonable amount of expenditures for a case of this magnitude. Because these costs should be borne equally by the beneficiaries of the class action, the award of costs is to be paid from the Settlement Fund. Accordingly, Plaintiffs' Counsel's Motion for Costs is GRANTED and they are awarded $10,245.39 to be paid from the Settlement Fund.

An appropriate Order shall issue.

## *ORDER*

For the reasons put forth in the accompanying Memorandum Opinion, it is accordingly ORDERED:

(1) that the Settlement Agreement between Plaintiffs, Richard W. Strang and the Class, and Defendants, JHM Mortgage Securities Limited Partnership, et al., is APPROVED;

(2) that Plaintiffs' Counsel Krause & Kalfayan; Finkelstein, Thompson & Loughran; Aguirre & Meyer; and Ryan Associates, P.C. are awarded attorneys' fees in the amount of $287,500.00, to be paid from the Settlement Fund; and

(3) that Plaintiffs' Counsel Krause & Kalfayan; Finkelstein, Thompson & Loughran; Aguirre & Meyer; and Ryan Associates, P.C. are awarded $10,245.39 for reimbursement of costs and expenses, to be paid from the Settlement Fund.

---

8. In *Blum v. Stenson*, 465 U.S. 886, 900 n. 16, 104 S.Ct. 1541, 1550 n. 16, 79 L.Ed.2d 891 (1984), the Supreme Court tacitly endorsed the use of the percentage method in common fund cases, stating: "Unlike the calculation of attorney's fees under the 'common fund doctrine' where a reasonable fee is based on a percentage of the fund bestowed on the class, a reasonable fee under § 1988 reflects the amount of attorney time expended on the litigation."