**In re ROYAL AHOLD N.V. SECURITIES & ERISA LITIGATION.**

Civil No. 03–MD–1539.

United States District Court, D. Maryland.

Nov. 2, 2006.

Seth D. Goldberg, Seth D. Goldberg PC, Steven J. Toll, Daniel Stephen Sommers, Robert Joseph Barton, Cohen Milstein Hausfeld and Toll PLLC, Washington, DC, Andrew J. Entwistle, Johnston Deforest Whitman, Jr., Robert Nicholas Cappucci, Stephen David Oestreich, Entwistle and Cappucci LLP, Robert Ira Harwood, Wechsler Harwood LLP, Robert S. Schachter, Zwerling Schachter and Zwerling LLP, Lester Levy, Wolf, Popper, Ross, Wolf & Jones, Fred Taylor Isquith, Wolf Haldenstein Adler Freeman and Herz LLP, Ralph M. Stone, Lee S. Shalov,

Shalov Stone and Bonner LLP, Steven G. Schulman, Jennifer Sarah Czeisler, Sanford Paul Dumain, Milberg Weiss Bershad and Schulman LLP, Daniel L. Berger, Hannah Greenwald, Jeffrey Neil Leibell, Bernstein Litowitz Berger and Grossmann, Menachem E. Lifshitz, Bernstein Liebhard and Lifshitz LLP, Jonathan M. Plasse, Goodkind Labation Rudoff and Sucharow LLP, Christopher Lometti, Frank R. Schirripa, Schoengold and Sporn PC, New York City, Andrew Radding, Gregory M. Kline, Howard Scott Jones, Adelberg Rudow Dorf and Hendler LLC, Charles J. Piven, Marshall N. Perkins, Brower Piven A. Professional Corporation, Steven Donald Silverman, Silverman and Thompson, Robert K. Jenner, Janet Jenner and Suggs LLC, Baltimore, MD, Samuel Howard Rudman, Robert Michael Rothman, Lerach Coughlin Stoia Geller Rudman and Robbins LLP, Melville, NY, Conor R. Crowley, Much Shelist Freed Denenberg Ament and Rubenstein PC, Chicago, IL, Ronald B. Rubin, Rubin and Rubin CHTD, Rockville, MD, Marc A. Topaz, Schiffrin and Barroway LLP, Radnor, PA, John J. Pentz, III, Class Action Fairness Group, Maynard, MA, for Plaintiff.

Heather K. McDevitt, Joseph B. Schmit, Kara F. Headley, Douglas P. Baumstein, Glenn M. Kurtz, White and Case LLP, Christopher Coyne Palermo, Elizabeth Ann Quinlan, William Andrew Krohley, Kelley Drye and Warren LLP, Amy Neuhardt, Shearman and Sterling LLP, Angela Joy Showalter, Arnold and Porter, George A. Salter, Richard Bloom, Tracey A. Tiska, Hogan and Hartson LLP, Andrew J. Levander, Neil A. Steiner, Dechert LLP, Sara Ann Ricciardi, David E. Massengill, Katharine E. Nolan, Edward D. Hassi, Simpson Thacher and Bartlett LLP, New York City, Andrew Gendron, G. Stewart Webb, Jr., Gabrielle S. Moses, Venable LLP, Gerard J. Gaeng, David Matthew Wyand, Rosenberg Martin Funk and Greenberg LLP, Therese M. Goldsmith, Steven F. Barley, Hogan and Hartson LLP, Stephen J. Nolan, Stephen J. Nolan Chartered, Baltimore, MD, John Arak Freedman, Leslie Wharton, Sarah Elizabeth Sorg, Scott B. Schreiber, Arnold and Porter, Alexandre De Gramont, Crowell and Moring LLP, Daniel Thomas Brown, Peter Hugh White, Richard J. Morvillo, Mayer Brown Rowe and Maw LLP, Joshua A. Ellis, Richard L. Brusca, Skadden Arps Slate Meagher and Flom LLP, Washington, DC, Paul D. Flynn, Miles and Stockbridge PC, Frederick, MD, for Defendant.

### *MEMORANDUM*

BLAKE, District Judge.

On June 16, 2006, following a hearing, lead plaintiffs' motion for final approval of class certification, settlement, and plan of allocation was granted. All objections as to those issues were denied.[1] Lead plaintiffs' motion for approval of lead counsel's application for attorneys' fees, and the objections directed only to fees, were reserved for further consideration.

As reflected in the June 16, 2006 Order, lead plaintiffs obtained a $1.1 billion cash settlement in their securities fraud suit against Royal Ahold ("Ahold") and related defendants.[2] They seek attorneys' fees of

---

1. *See* Final Judgment and Order of Dismissal in all Securities Actions (docket entry no. 765).

2. The settlement did not include Deloitte & Touche U.S. or Deloitte & Touche Netherlands. A full discussion of the litigation is contained in prior published opinions, *see In re Royal Ahold N.V. Sec. & ERISA Litig.,* 351 F.Supp.2d 334 (D.Md.2004); 384 F.Supp.2d 838 (D.Md.2005).

$163,309,836.20, or 15% of the total minus certain expenses (*Fee Application Fund* ). This would be a 3.21 multiplier of the lodestar. Whether this amount is reasonable depends on the application of various principles outlined in the Private Securities Litigation Reform Act ("PSLRA") and relevant case law. For the reasons stated below, the court will award a fee of *$130,647,868.95*, which is 12% of the Fee Application Fund and represents a 2.57 multiplier of the lodestar. Expenses in the full amount requested of $3,267,758.76 also will be awarded.[3]

■ The PSLRA limits any award of attorneys' fees and expenses to "a reasonable percentage" of any recovery.[4] The Act does not, however, prescribe a method of calculating the award or set any specific percentage that must be applied. While the Fourth Circuit has not yet definitively addressed the issue, other district judges in this circuit have suggested a flexible analysis that uses the percentage of recovery method but applies the lodestar method as a cross-check, recognizing that "both are useful tools for trial courts to use to inform and calibrate a judgment as to a fair and reasonable PSLRA fee award." *See In re Microstrategy, Inc., Sec. Litig.*, 172 F.Supp.2d 778, 787 (E.D.Va.2001); *cf. Goldenberg v. Marriott Corp.*, 33 F.Supp.2d 434, 439 n. 6 (D.Md.1998). This approach is followed by the Second Circuit. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir.2000); *In re WorldCom Sec. Litig.*, 388 F.Supp.2d 319, 355 (S.D.N.Y.2005). As the court noted in *WorldCom,* "where the lodestar fee is used 'as a mere cross-check' to the percentage method of determining reasonable attorneys' fees, 'the hours documented by counsel need not be exhaustively scrutinized by the district court.' " 388 F.Supp.2d at 355 (quoting *Goldberger,* 209 F.3d at 50).

■ Under both methods, there are numerous factors that may be considered in determining a reasonable fee. The Fourth Circuit adopted a 12–factor test in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978).[5] The terms of a retainer agreement negotiated, as it was in this case, between lead counsel and a sophisticated institutional investor designated as lead plaintiff deserve some deference, *see In re WorldCom, Sec. Litig.*, 388 F.Supp.2d at 356; *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3rd Cir.2001), although such terms are not dispositive, *see Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123–24 (2d Cir.2005). Another important principle is that the percentage awarded ordinarily should decrease as the amount of the recovery rises, particularly in "mega-fund" cases where the recovery is above $100 million. *In re*

---

3. The requested amount of expenses has not been challenged.

4. *See* 15 U.S.C. § 78u–4(a)(6).

5. The factors include:
   (1) time and labor expended;
   (2) novelty and difficulty of the questions raised;
   (3) skill required to properly perform the legal services;
   (4) attorney's opportunity costs in pressing the litigation;
   (5) customary fee for like work;
   (6) attorney's expectations at the outset of litigation;
   (7) time limitations imposed by the client or circumstances;
   (8) amount in controversy and results obtained;
   (9) experience, reputation, and ability of the attorney;
   (10) undesirability of the case within the legal community in which the suit arose;
   (11) nature and length of the professional relationship between the attorney and client;
   (12) fee awards in similar cases.

*Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir.2001).

In this case, counsels' lodestar figure is $50,858,606.25, representing 147,896.05 hours expended at various hourly rates.[6] The retainer agreement permitted counsel to request 20% of the settlement amount, but that was voluntarily reduced to the 15% now sought. Counsel also agreed not to request a fee on any interest the settlement fund earns, and not to seek fees for the time spent after May 11, 2006, in effectuating the settlement, including distribution of the fund to the class. *Cf. In re WorldCom Sec. Litig.*, 388 F.Supp.2d at 354 n. 50.

Objections to the attorneys' fees request were filed by John Pentz, Esq., purportedly on behalf of plaintiff Linda Tsai (docket entry no. 722); and by United States Trust Company, National Association ("U.S.Trust") (docket entry no. 741).

Pentz is a professional and generally unsuccessful objector who apparently attached himself to Tsai; Tsai was represented by different counsel at the early stages of this litigation.[7] Her initial objections to the settlement, filed on March 29, 2006, complained that Ahold should pay more money to *all* class members, but did not mention the attorneys' fee request. The later objection, filed by Pentz on May 3, 2006, complained that *U.S.* investors should have received a greater share of the settlement[8] and that the attorneys' fee should be limited to the greater of 7.5% or

a 2.3 multiplier of the lodestar. Pentz did not challenge the lodestar figure calculated by plaintiffs' counsel and provided no coherent explanation for his contention that the fee is excessive. In summary, the Pentz/Tsai objection was not well reasoned and was not helpful.

U.S. Trust, engaged as an independent fiduciary for the ERISA plans, did not object to the settlement amount or allocation but did urge a reduction in the amount of attorneys' fees. Its objection is based on a comparison of percentage awards in what U.S. Trust identifies as the ten largest securities class action settlements in the last few years. U.S. Trust contends that as settlement amounts increase, percentage fee recovery decreases, and that in all cases involving settlements of $1 billion or more (with one possible exception), the awards have been less than 10%.

Plaintiffs' counsel, responding to both sets of objections, selects a somewhat different range of comparative awards and emphasizes the need to review the particular facts of this litigation, relying heavily on the affidavits of Columbia University Law School Professor John C. Coffee, Jr. I have carefully reviewed the charts of actual awards provided by both lead plaintiffs and U.S. Trust but will not repeat them here. I agree with plaintiffs that the range of comparable settlements should include some below $1 billion as well as those few that substantially exceed $1 bil-

---

6. These hourly rates, while somewhat high for this district, are within a reasonable range for the national firms that prosecuted the case; *see In re Microstrategy, Inc., Sec. Litig.*, 172 F.Supp.2d at 788. Moreover, by agreement with lead plaintiff COPERA, hourly rates were capped at $595 even for partners who ordinarily bill at a higher rate. *Cf. In re WorldCom, Sec. Litig.*, 388 F.Supp.2d at 354 n. 50 (capping rates at 2004 levels).

7. Tsai unsuccessfully sought to be designated lead plaintiff; at that time, she was represented by Schiffrin & Barroway, LLP.

8. The Tsai & Pentz objections to the settlement amount and allocation already have been denied.

lion.[9]  Strictly on a percentage comparison approach, a 12% fee award appears to me a reasonable percentage of the class recovery.

■ Application of the *Barber* factors, some of which already have been addressed, also supports an award of this magnitude.  On the one hand, settlement was achieved well before trial, presumably aided by significant concessions about the fraud at U.S. Food Service and the existence of "side letters" related to the joint venture consolidation.  While some of the legal issues were familiar, others were more difficult and, at least as to subject-matter jurisdiction, novel in this Circuit.  While the case was not "undesirable," lead counsel was required to and did devote exceptional resources to the prosecution, facing some risk of non-recovery as the fee was entirely contingent under the retainer agreement with COPERA, and Royal Ahold's financial position was unclear. The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district.  The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages.  The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.  Finally, plaintiffs' counsel were vigorous and extremely competent in their litigation against equally well-qualified defense firms.  When the *Barber* factors are considered, together with the lodestar fee that has not been challenged, the 2.57 multiplier represented by a 12% percentage award is reasonable and fully justified.[10]

Accordingly, while the U.S. Trust objection was helpful in contributing to the discussion of the percentage recovery approach, I do not agree with its apparent suggestion that 10% should be the upper limit for any recovery over $1 billion.

A separate order stating the award follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1.  Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses is **Granted** to the extent set forth herein.

2.  Lead Counsel shall receive reimbursement of expenses incurred in the amount of $3,267,758.76 (the "Expense Reimbursement"), no part of which includes interest on any expenses advanced or incurred during this litigation.  The Expense Reimbursement shall be paid to Lead Counsel from the Settlement Fund within three (3) business days after Final Approval (defined below).

3.  Plaintiffs' Lead Counsel shall receive an award of attorneys' fees in the amount of $130,647,868.95, representing 12% of the Settlement Fund (after deducting the Expense Reimbursement and the $8 million set aside to pay the costs of Settlement notice) (the "Fee Application Fund"), excluding any and all interest earned thereon (the "Fee Award").  Lead

9.  I note that in *WorldCom,* a $3.55 billion subset of the total settlement resulted in attorneys' fees which reflected a percentage award of only 5.5%, but a lodestar multiplier of 4.0. 388 F.Supp.2d at 353–54.

10.  *See In re Cendant Corp. PRIDES Litig.,* 243 F.3d at 742 (finding lodestar multiplier of 1.35 to 2.99 common in megafunds over $100 million); *In re Microstrategy, Inc., Sec. Litig.,* 172 F.Supp.2d at 790 (2.6 multiplier).

Counsel shall be entitled to receive two-thirds of the Fee Award immediately upon Final Approval, which is defined as: (i) the Court's entry of the Final Judgment and Order of Dismissal; and (ii) if there is an objection, then when the time for appeal or to seek permission to appeal from the Final Judgment and Order of Dismissal has expired, or if appealed, when the Final Judgment and Order of Dismissal is affirmed in its entirety and such affirmance is no longer subject to further appeal by writ of *certiorari*, or otherwise. If an appeal is taken from the Court's award of attorneys' fees and the appeal is denied, in whole or in part, withdrawn, or dismissed, Plaintiffs' Lead Counsel shall be entitled to receive interest on the Fee Award from the date Final Approval would have been effective if no appeal had been taken. Interest shall accrue at the same rate as the interest being earned on the Settlement Fund.

4. Lead Counsel shall be entitled to receive the remaining one-third of the Fee Award within three (3) business days after Royal Ahold N.V. deposits the Final Payment, as defined in Paragraph 6 of the Amended Settlement Agreement, into the Settlement Fund.

5. Subject to Lead Plaintiffs' approval, Lead Counsel shall have discretion to distribute portions of the Fee Award and the Expense Reimbursement to certain counsel, previously approved by Lead Plaintiffs ("Plaintiffs' Assisting Counsel"), that assisted Lead Counsel in the prosecution of the Action based upon such firm's relative contributions to the prosecution and resolution of the Action.

6. Copies of this Order and the accompanying Memorandum shall be **SENT** to counsel of record.