**Gary P. JONES, et al., Plaintiffs,**

v.

**DOMINION RESOURCES SERVICES, INC., et al., Defendants.**

**Civil Action No. 2:06–cv–00671.**

United States District Court,
S.D. West Virginia,
Charleston Division.

March 6, 2009.

■■■■■■■■■ expenses and a $25,000 incentive award for each named Class Representative.

## I. Background

On January 30, 2009, I granted final approval to a Settlement Agreement in this action [Docket 188]. Pursuant to the Settlement Agreement, all Participating Subclass Members, that is, Class Members who have not opted out of the Settlement Agreement, are entitled to claim a Settlement Payment. The Settlement Payment owed to each Class Member is determined by a formula set out in the Settlement Agreement. That formula includes a deduction for court approved attorneys' fees and costs. The Settlement Agreement also provides for Class Counsel to apply for a fee award "in an amount not to exceed 25% of the Gross Owner's Totals for Participating Subclass Members, plus Costs of Litigation." The defendants agreed not to object to Class Counsels' fee application.

In accordance with the Settlement Agreement, Class Counsel have requested a fee award equivalent to 25% of the Settlement Fund, or more precisely, 25% of the Gross Owner's Totals for Participating Subclass Members. The estimated Settlement Fund is between $40 and $50 million dollars.[2] If approved, Class Counsel will

David J. Romano, Law Offices of David J. Romano, Clarksburg, WV, George M. Scott, Spencer, WV, Mark R. Staun, Scott S. Segal, The Segal Law Firm, Marvin W. Masters, The Masters Law Firm, Michael W. Carey, Robert E. Douglas, Carey Scott & Douglas, Charleston, WV, Thomas W. Pettit, Barboursville, WV, for Plaintiffs.

Amy M. Smith, Tiffany A. Swiger, W. Henry Lawrence, IV, Susan L. Deniker, Steptoe & Johnson, Jacqueline A. Wilson, Thomas J. Allen, Dominion Resources Services, Inc., Clarksburg, WV, Bridget D. Furbee, Dominion Resources Services, Inc., Jane Lew, WV, for Defendants.

## ORDER

JOSEPH R. GOODWIN, Chief Judge.

Pending before the court is Class Counsel's Motion for Award of Attorney Fees and Reimbursement of Expenses [Docket 180]. Class Counsel[1] seeks a fee award equivalent to 25% of the Settlement Fund of approximately $50 million. Class Counsel also seeks $91,883.50 for out-of-pocket

---

1. On July 16, 2008, this court entered an Order Conditionally Certifying Temporary Settlement Class and Preliminarily Approving Settlement in which I appointed as Class Counsel Marvin W. Masters, The Masters Law Firm, LC, Charleston, West Virginia; Michael W. Carey, Carey Scoot & Douglas, PLLC, Charleston, West Virginia; Thomas W. Pettit, Thomas W. Pettit, L.C., Barboursville, West Virginia; Scott S. Segal, The Segal Law Firm, Charleston, West Virginia; and, David J. Romano, Romano Law Offices, Clarksburg, West Virginia. (July 16, 2008 Order ¶ 4 [Docket 107]).

2. The defendants will contribute to the Settlement Fund an amount equal to the Gross Owner's Totals for Participating Subclass Members. The Settlement Agreement does not

precisely explain the method for calculating this contribution. By definition, the Gross Owner's Total for Participating Subclass Members is equal to the total amount owed to every class member, in both the One–Eighth and Flat Rate Subclasses, that did not opt out of the Settlement Agreement. But the amount owed to each One–Eighth Subclass Member depends on the Settlement Option selected by each of those Subclass Members. Consequently, there remains some ambiguity as to the defendants' contribution obligation for One–Eighth Subclass Members that did not opt out but also do not claim payment and select a specific Settlement Option.

The parties did estimate the defendants' maximum contribution obligation to the Settlement Fund assuming that no class members would opt out. In the event that all

receive 25% of that amount, which is an estimated $10 to $12.5 million dollars.

As agreed, the defendants have not objected to the Class Counsels' fee application. One class member, however, Ann Shreve Norris, objected to the Settlement Agreement's fee provision. In my January 30, 2009 Order, I overruled Ms. Norris' objection, but advised that I would take her concerns into consideration when addressing Class Counsels' fee request.

## II. Method for Determining Reasonable Attorneys' Fees Award

When a class settlement results in the creation of a common fund for the benefit of the class members, reasonable attorneys' fees may be awarded from the common fund. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (explaining the common fund doctrine); *see* Fed.R.Civ.P. 23(h) (authorizing the award of reasonable attorneys' fees in class actions). In calculating such fees, courts have generally employed two different methods: the "lodestar" method and the "percentage of fund" method. Under the "lodestar" method, a district court identifies a lodestar figure by multiplying the number of hours expended by class counsel by a reasonable hourly rate. The court may then adjust the lodestar figure using a "mulitplier" derived from a number of factors, such as the benefit

achieved for the class and the complexity of the case. *See In re Microstrategy, Inc. Sec. Litig,* 172 F.Supp.2d 778, 786 (E.D.Va. 2001). Under the "percentage of fund" method, the court awards the fee as a percentage of the common fund. *Id.* The percentage of fund method operates similarly to a contingency fee arrangement in that the attorneys receive a percentage of the final monetary value obtained for their clients. Unlike contingency fees, however, the percentage fee award is determined ex post, at the end of the litigation, rather than by an ex ante arrangement. In making this ex post determination of a reasonable percentage, courts consider many of the same factors used to adjust the lodestar figure. *Id.*

The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases. *See Muhammad v. Nat'l City Mortgage, Inc.,* Civil Action No. 2:07–0423, 2008 WL 5377783, at *7 (S.D.W.Va. Dec. 19, 2008) (Copenhaver, J.); *see also Strang et al. v. JHM Mortgage Sec. Ltd. P'ship et al.,* 890 F.Supp. 499, 502 (E.D.Va.1995); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 187; Third Circuit Task Force Report, *Selection of Class Counsel,* 208 F.R.D. 340, 355 (January 15, 2002) ("A percentage fee, tailored to the realities of a particular case, remains superior to any other means of determining a reasonable

One–Eighth Subclass Members elect Settlement Option A, the defendants' estimated contribution for those subclass members is equal to $38,713,093.00. In the event that all One–Eighth Subclass Members select Settlement Option B, the defendants' estimated contribution for those subclass members is equal to $29,971,426.00. The defendants' estimated contribution for Flat Rate Subclass Members, who do not have Settlement Options, is equal to $11,768,605.00. Therefore, the defendants' contribution, without considering the amounts deducted for class members who opted out, could range from $41,740,031.00 to $50,481,698.00. Though

defendants' actual contribution will be some amount lower than these estimates after the amount owed to opt-out members is deducted, the parties have not provided this court with a more accurate estimate of that actual contribution. At the fairness hearing, the parties estimated that the Settlement Fund would contain close to $40 million. But in their Motion for Award of Attorneys Fees, Class Counsel estimated a Settlement Fund of $50 million. In the absence of more accurate information, the best estimate of the benefit to the class and the baseline for calculating the attorneys' fee award appears to be a range between $40 and $50 million.

fee for class counsel."). One of the reasons that courts prefer the percentage method is that the percentage method better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys. See Task Force on Contingent Fees, 25 REV. LITIG. at 469 ("Like percentage fees for individual plaintiffs, the percentage fee for class actions ties the lawyer's fee directly to the success of the litigation."); *see also In re Cardinal Health,* 528 F.Supp.2d 752, 753 (S.D.Ohio 2007). In contrast, when the lodestar method is applied, class counsel has an incentive to "over-litigate" or draw out cases in an effort to increase the number of hours used to calculate their fees. *In re Microstrategy,* 172 F.Supp.2d at 787; *In re Merrill Lynch Tyco Research Sec. Litig.,* 249 F.R.D. 124, 136 (S.D.N.Y.2008). Also, the percentage method allows district courts more flexibility to award attorneys for the efficient settlement of a case. *See In re Cardinal Health,* 528 F.Supp.2d at 762.

Courts applying the percentage method have not, however, completely discarded the lodestar method. The lodestar method, when applied together with the percentage method, can neutralize the drawbacks of the percentage method. For instance, the lodestar method can counteract the anchoring effect of a percentage fee request. *Id.* at 763. Because courts tend to deviate only slightly from the requested percentage amount, plaintiffs' counsel can effectively "manipulate the fee award they are likely to receive by simply requesting a higher percentage." *Id.* The lodestar method, however, provides courts with an objective fee amount with which to compare the requested fee. The lodestar method can also guard against attorney windfalls. A court's use of the percentage method "can result in a windfall for the plaintiffs' attorneys because the size of the settlement does not necessarily reflect the skill, efficiency, and hard-work of counsel." *Id.* "[A] large settlement could result from the mere happenstance that the class is large, even though the liability issue would be the same regardless of whether there were 8,000 or 80,000 class members." *Id.*; *see also In re Cendant,* 243 F.3d 722, 736 (3d Cir.2001) (explaining that the basis for reducing the percentage fee awarded as the size of the common fund increases is that "in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." (internal quotations omitted)). An application of the lodestar method ensures that "the fee award is still roughly aligned with the amount of work the attorneys contributed." *In re Cardinal Health,* 528 F.Supp.2d at 764.

Courts incorporate the lodestar method into the percentage method in two ways. First, as discussed above, courts often apply lodestar factors when assessing the reasonableness of attorneys' fees under the percentage method. *See In re Microstrategy,* 172 F.Supp.2d at 786–87 (explaining that courts using the percentage method "reference the same case-specific factors many courts use to adjust, or determine a multiplier for, a lodestar figure."). Many courts have also incorporated a "lodestar cross-check" into their review of a percentage-based attorneys' fee. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 191; *In re Royal Ahold N.V. Securities & ERISA Litig.,* 461 F.Supp.2d 383, 385 (D.Md.2006); *see also Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 436 (2d Cir.2007); *In re AT & T Corp.,* 455 F.3d 160, 164 (3d Cir.2006); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th Cir.2002); *In re Enron Corp. Sec., Derivative & ERISA Litig.,* 586 F.Supp.2d 732, 778

(S.D.Tex.2008); *In re Cardinal Health,* 528 F.Supp.2d at 764; *Smith v. Krispy Kreme Doughnut Corp.,* No. 1:05–CV–00187, 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007). By using the percentage of fund method and supplementing it with the lodestar cross-check, a court can take advantage of the benefits of both methods. *See In re Microstrategy,* 172 F.Supp.2d at 787.

The Fourth Circuit has neither announced a preferred method for determining the reasonableness of attorneys' fees in common fund class actions nor identified factors for district courts to apply when using the percentage method.[3] I therefore have complete discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the [instant matter]." *In re Cardinal Health,* 528 F.Supp.2d at 761 (quoting *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 779 (6th Cir.1996)). In light of the consensus among courts that the percentage method is the superior method for calculating attorneys' fees from a common fund, and with special concern for the perverse incentives associated with the lodestar method, I find that the percentage method is the appropriate method for determining reasonable attorneys' fees in this case. I will also apply the lodestar cross-check as an element of objectivity in my analysis.[4] I note, however, that with regard to both the percentage of fund factors and the lodestar cross-check,

"there is no specific formula for analyzing these factors. 'Each case is different, and in certain cases, one factor may outweigh the rest.'" *Muhammad,* 2008 WL 5377783, at *8 (quoting *Gunter v. Ridgewood Energy Corp.,* 223 F.3d 190, 195 n. 1 (3d Cir.2000)).

### III. Reasonableness Determination

■ In order to determine a reasonable attorneys' fee for Class Counsel in this case, I have considered the following factors commonly used by courts in the application of the percentage method: (1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy. *See In re Cendant,* 243 F.3d at 733; *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir.2000); *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir.1974); *see also Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978) (adopting similar factors for consideration under the lodestar method). As discussed above, I will also apply a lodestar cross-check. I **FIND** that the following factors all weigh in favor of the reasonableness of the requested fee award: the significant benefit obtained for the class; the quality, skill and efficiency of Class Counsel; the proximity of the requested award to awards in similar cases; and, the low incidence of objections to the

---

**3.** Several district courts in this circuit have, however, elected to use the percentage method instead of the lodestar method. *See Muhammad,* 2008 WL 5377783, at *7; *In re Ahold,* 461 F.Supp.2d at 385; *Teague v. Bakker,* 213 F.Supp.2d 571, 583 (W.D.N.C.2002); *Goldenberg v. Marriott PLP Corp.,* 33 F.Supp.2d 434, 438 (D.Md.1998); *Strang,* 890 F.Supp. at 502.

**4.** Several courts in this circuit have applied the lodestar cross-check in conjunction with

the percentage method. *See* Order on Fee Petition of Class Counsel at 2, *In re Serzone Products Liability Litig.,* No. 2:02–md–01477 (S.D.W.Va. May 16, 2007); *Teague,* 213 F.Supp.2d at 585 (conducting a general reasonableness analysis and then assessing the fee award under the lodestar method); *Goldenberg,* 33 F.Supp.2d 434, 439 n. 6 (D.Md. 1998) (applying the percentage method but finding that the fee award was reasonable even under the lodestar approach).

award. **I FIND** that the following factors weigh against the reasonableness of the requested fee award and in favor of a reduced fee award: the non-complex nature of the case; the low risk of non-payment; public policy; and, the high lodestar multiplier resulting from the requested fee award. Balancing all of these factors, **I FIND** that a fee award in the amount of 20% of the Settlement Fund is a reasonable fee for Class Counsels' work in this case.

### A. The Results Obtained for the Class

The result achieved by the attorneys for the class is often cited as one of the most significant factors in determining the reasonableness of a fee award. *See Teague,* 213 F.Supp.2d at 583 ("In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.'") (quoting *McKnight v. Circuit City Stores, Inc.,* 14 Fed.Appx. 147, 149 (4th Cir.2001)); *see also In re Cardinal Health,* 528 F.Supp.2d at 764; Fed.R.Civ.P. 23(h) advisory committee notes to 2003 amendments (explaining that the "fundamental focus" in determining a common fund attorneys' fee award "is the result actually achieved for class members."). In this case, Class Counsels' efforts have led to the creation of an estimated $40 to $50 million common fund that will be disbursed to class members who claim compensation. The size of this fund is significant and the fund will be disbursed according to the individualized value of the settlement to each class member. Also, the virtual absence objections among a large class, almost all of whom were individually notified, suggests that the class members are pleased with the settlement result. **I FIND** that Class Counsel have obtained a significant and valuable benefit for the class.

### B. Quality, Skill and Efficiency of the Attorneys Involved

Class Counsel are experienced in class action litigation, particularly in the area of oil and gas royalties. In fact, several of the Class Counsel were involved in *Tawney et al. v. Columbia Natural Resources, LLC et al.,* Civil Action No. 03–C–10E (Circuit Court of Roane County). (Mem. Supp. Mot. Award Attorney Fees, Ex. B.) *Tawney* was a West Virginia state court case involving legal issues similar to the issues in this case and led to a landmark West Virginia gas and oil royalties decision by the Supreme Court of Appeals of West Virginia. Not only did Class Counsel bring significant experience to this case but their participation in eight mediation sessions over the course of a year indicates that they thoroughly advocated on behalf of the class. Also, the achievement of settlement for the class within two years of commencing litigation demonstrates Class Counsels' efficiency. One of the primary benefits of the percentage method over the lodestar method is its allowance for rewards to attorneys for efficient work and these attorneys should be rewarded accordingly. *See In re Cardinal Health,* 528 F.Supp.2d at 762. **I FIND** that Class Counsel were highly qualified, skilled, and efficient.

### C. Complexity and Duration of Litigation

In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement and the amount and nature of discovery. *In re Cendant,* 243 F.3d at 735–36. Where discovery is informal and does not involve conflicts over privilege or access to documents, the case is less complex and time consuming. *In re Merrill Lynch,* 249

F.R.D. at 137–38. The case is more complex when the applicable laws are new, changing, or unclear. *See id.* at 139; *Goldenberg,* 33 F.Supp.2d 434, 439 (D.Md. 1998) (finding that the case was "fairly complex, requiring analysis of several complicated financing arrangements and tax shelter opportunities in the context of a business and regulatory climate in flux."). In a settlement context, courts may look to whether negotiations were "hard fought," "complex," or "arduous." *In re Merrill Lynch,* 249 F.R.D. at 138. The duration of the litigation is also compared to "the amount of time expended in most other large class actions." *In re Cendant,* 243 F.3d at 736.

The duration of this litigation was typical of other large class actions, *see In re Cardinal Health,* 528 F.Supp.2d at 756 (litigation lasting three years); *Goldenberg,* 33 F.Supp.2d at 436 (litigation lasting two years between filing and settlement), but it was also less complex than other class actions. The discovery in this case was straightforward—Class Counsel reviewed over 118,000 pages of documents but there is no evidence that they had to fight for access to these documents. Motions practice in this case was minimal— the parties only briefed two motions over the course of one year. Though oil and gas royalties law in West Virginia is complicated and unsettled, Class Counsel were not required to litigate these issues nor the difficult preliminary issues involved with class certification. On the other hand, negotiations in this case were time-intensive and hard-fought and required great attention to detail. Class Counsel met with the defendants in eight separate mediation sessions, and the comprehensive Settlement Agreement is a testament to Class Counsels' thorough efforts.

Overall, I **FIND** that this case was less complex than other class actions but that Class Counsel performed their duties zealously and collegially. The cooperative spirit that pervaded this settlement process mitigates the lack of conflict and complexity in its proceedings. Mitigation is warranted because excessive emphasis on the absence of complexity in the case could, like the lodestar method, create an incentive for class counsel to behave uncooperatively in settlement negotiations.

### D. Risk of Non–Payment

In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis. *See In re Cardinal Health,* 528 F.Supp.2d at 766. The risk undertaken by class counsel is measured by, among other things, the presence of government action preceding the suit, the ease of proving claims and damages, and, if the case resulted in settlement, the relative speed at which the case was settled. *See In re Merrill Lynch,* 249 F.R.D. at 139–40; *In re Cardinal Health,* 528 F.Supp.2d at 766 (finding that class counsel faced "less risk than in other securities cases because it piggybacked on the success of a prior SEC investigation" and because the defendant had conceded some liability); *id.* (finding that class counsel faced lower risk because public events precipitated the litigation); *Strang,* 890 F.Supp. at 503 (finding that risks to plaintiffs' counsel were minimized by early settlement and reducing the percentage award from 30% to 25% of the Settlement Fund accordingly).

Certainly, attorneys undertaking class actions bear substantial risks that the litigation will not result in payment. The attorneys risk defeat at several stages of litigation: class certification, dispositive motions, and finally, trial. There is no evidence, however, that Class Counsel undertook greater risk in this case than in any other typical class action. Further,

the usual risks of nonpayment associated with class actions were largely dissipated once the parties entered settlement negotiations. *Cf. Goldenberg*, 33 F.Supp.2d at 436 (awarding fees in an "intensely adversarial litigation" where litigation proceeded at least through class certification stage). Also, the record in this case indicates that the parties entered early mediation and started discussing settlement with an eye toward early resolution. (*See* Mem. Supp. Mot. Award Attorney Fees 3.) The likelihood of settlement, though not a certainty, greatly reduced the risk of nonpayment experienced by Class Counsel. **I FIND** that Class Counsel experienced lower risk in the pursuit of this case than the risk present in other class actions.

### E.  Awards in Similar Cases

Class Counsel has noted that "25% is a very common 'benchmark' percentage that is presumptively correct," and that "[i]t has become virtually routine for courts to use between 20% and 33% as the 'benchmark' for a percentage fee award." (Mem. Supp. Mot. Award Attorney Fees 7.) Indeed, "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 188. I am not bound, however, by benchmarks. *See* Third Circuit Task Force Report, 208 F.R.D. at 355 ("In setting a percentage fee, the court should avoid rigid adherence to a 'benchmark.' "). On the contrary, "a district court may not rely on a formulaic application of the appropriate range in awarding fees but must consider the relevant circumstances of the particular case." *In re Cendant*, 243 F.3d at 736. **I FIND** that 25% fee awards are often granted in class actions and will accord this factor due

weight relative to the other factors discussed above and below.

### F.  Objections

The high success of the class notification in this case, coupled with the extremely low number of objections, support the reasonableness of the requested fee. The notice plan approved in this case provided direct, individual notice to more than 95% of the 25,000 member class. This is a remarkably high success rate, especially compared to class actions in which class members are unknown, direct notice is impossible, and notice is instead provided through public outlets. Following the successful notification of the class, only three class members objected to the Settlement Agreement.[5] Two of those class members eventually withdrew their objections.[6]

As discussed above, this very low incidence of objections, especially in light of the success of the direct notification, not only demonstrates the Class Members' satisfaction with the settlement result, but also shows their implicit approval of its terms, including the attorneys' fee provision. Because such a high percentage of the class was directly notified of the attorneys' fee provision, and almost none of them objected to that provision, I consider the Class Members to have demonstrated approval of the instant fee request and agreement to pay such an amount. I **FIND** that the "clients' " approval of the attorneys' fee request supports the reasonableness of the requested fee award.

### G.  Public Policy

Only one class member objected to the requested fee award in this matter. Ms. Ann Shreve Norris objected to the provision of the settlement agreement allowing

---

5.  Objections were filed by Ann Shreve Norris [Docket 131], Hunter M. Bennett [Docket 149], and Doris Weaver Griffith [Docket 156].

6.  Mr. Bennett withdrew his objection in a letter dated January 16, 2009 [Docket 186] and Ms. Griffith withdrew her objection in a letter dated January 29, 2009 [Docket 190].

plaintiffs' counsel to file an unopposed petition for a fee award in the amount of 25% of the settlement fund. She wrote to this court:

> I object to the amount to be awarded to attorneys in this case.
>
> Twenty-five percent plus expenses is an exorbitant amount requested by attorneys.
>
> This, again, points out the atitude [sic] of attorneys handling this type of class-action law suits. It is exhibited over and over in our Court Rooms. They are not doing this for the public good but only as a way to increase their wealth.

Objection by Ann Shreve Norris [Docket 131].

Ms. Norris is not alone in her concerns. "The most frequent complaint surrounding class action fees is that they are artificially high, with the result (among others) that plaintiffs' lawyers receive too much of the funds set aside to compensate victims." *Id.* at 466. As the Third Circuit Task Force noted, "there is a perception among a significant part of the non-lawyer population and even among lawyers and judges that the risk premium is too high in class action cases and that class action plaintiffs' lawyers are overcompensated for the work that they do." Third Circuit Task Force Report, 208 F.R.D. at 344. Such percep-

tions are not only harmful to the legal profession, but undermine the integrity of the entire legal system.[7]

Perceptions such as those expressed by Ms. Norris strike at the very core of the ethics of the legal profession, specifically, the lawyer's ethical duty to safeguard the legal system. The Code of Professional Conduct in every state explains the relationship of lawyers to the legal system. For example, the West Virginia Rules of Professional Conduct state that: "A lawyer is ... an officer of the legal system and a public citizen having a special responsibility for the quality of justice." WEST VIRGINIA STATE BAR, RULES OF PROFESSIONAL CONDUCT, Preamble. In addition, "[l]awyers play a vital role in the preservation of society. The fulfillment of this role requires an understanding by lawyers of their relationship to our legal system." *Id.* As charged by the rules of legal ethics, lawyers and judges are guardians of the legal system and have a special duty to ensure that their conduct promotes the integrity of that system.

The same rules that charge the legal profession with safeguarding the nation's judicial system demand that attorneys limit their fee to what is reasonable. *See, e.g.,* West Virginia State Bar, Rules of Professional Conduct, Rule 1.5.[8] Indeed, several

---

7. The RAND Institute for Civil Justice summarized the criticism of class actions seeking money damages as follows: "Critics argue that lawyers seek out opportunities to bring these large-scale suits in the expectation that they will receive large fees, whether or not the suit has underlying merit and whether or not the individuals on whose behalf the suit is brought benefit significantly from its resolution. The critics argue that such class actions impose unnecessary costs on manufacturers and service providers, which are passed on to consumers in the form of higher prices, and that such litigation deters innovation, impairs financial markets, and threatens U.S. economic competitiveness. They also argue that misuse of class actions has brought the legal

system into disrepute." Deborah Hensler et al., RAND Institute for Civil Justice, CLASS ACTION DILEMMAS: PURSUING PUBLIC GOALS FOR PRIVATE GAIN 4 (2000).

8. This rule establishes a list of factors for use in determining a reasonable attorneys' fee that closely resembles the percentage of fund fee factors discussed above: "(1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount in-

courts have recognized the connection between reasonable attorneys' fees and the strength of the legal system and have reduced attorneys' fees on the basis of that relationship. *See, e.g., In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 396 (S.D.N.Y.1999) ("[I]t is the Court's duty to avoid any sense of vicarious generosity or to permit [attorneys' fees] to be enhanced without restraint above a fair and reasonable amount under all the facts and circumstances, precluding any notion that there are no decent limits to compensation for services of an attorney serving another's interests."); *Florida v. Am. Tobacco Co. et al.*, No. CL 95–14566 (Fla. 15th Cir.Ct. Nov. 12, 1997) ("[The attorneys] are officers of the Court and the people's advocate in this case. What may have seemed to be a reasonable and ordinary contract when this case began has now developed into an unconscionable one."); *Wade v. Clemmons*, 84 Misc.2d 822, 377 N.Y.S.2d 415, 420 (N.Y.App.Div.1975) (reducing fee award "where its retention would expose the attorney to the reproach of overreaching. He is an officer of the court, and is judged as such, and technical contractual rights must yield to his duty as officer." (internal quotations omitted)). Without a doubt, "the fairness of [attorneys' fee] terms reflects directly on the court and its bar." *Rosquist v. Soo Line R.R.*, 692 F.2d 1107, 1111 (7th Cir.1982). Because of the damage caused by perceptions such as those of Ms. Norris, lawyers requesting attorneys' fees and judges reviewing those requests must exercise heightened vigilance to ensure the fees are in fact reasonable beyond reproach and worthy of our justice system.

Competing with the public policy against excessive fee awards, however, is the policy encouraging "counsel to accept worthy engagements." *In re Cardinal Health*, 528 F.Supp.2d at 765 (internal quotations omitted). At the heart of the class action lies the belief "that the interests of justice are well served by class actions that vindicate rights that might otherwise go unprotected and that spare courts the burden of handling numerous lawsuits, some small and some not so small, arising from a common set of facts." Third Circuit Task Force Report, 208 F.R.D. at 342. Therefore, public policy generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves but also will not create an incentive to bring unmeritorious actions. *See In re Merrill Lynch*, 249 F.R.D. at 142; *In re Microstrategy*, 172 F.Supp.2d at 789 n. 36. Attorneys' fees must be sufficient "to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class...." *In re Microstrategy*, 172 F.Supp.2d at 788.

I share Ms. Norris' concerns about the trend towards excessive attorneys' fees in class actions. I can easily understand that fees deemed reasonable by the bar and the judiciary appear unseemly to the general public. I will keep the implications of such an effect in mind as I make a final determination as to the fee awards.

## H. Lodestar Cross–Check

Because I am using the lodestar method as a cross-check, I need not apply the "exhaustive scrutiny" normally required by that method. *Goldberger*, 209 F.3d at 50

volved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and the length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent." West Virginia State Bar, Rules of Professional Conduct, Rule 1.5(a).

("[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."); *see also In re Rite Aid Corp.*, 396 F.3d 294, 306–07 (2005). Instead, I may use Class Counsels' estimate of the hours they have spent working on this case. By the end of the administration of this settlement, Class Counsel will have expended an estimated 4,694.40 hours in this litigation. (Mem. Supp. Mot. Award Attorney Fees 4.) Though Class Counsel have not submitted the rate at which they would have billed these hours, I will calculate the lodestar figure assuming they could bill all of these hours at the top end of the market rate which is approximately $500 per hour. The resulting lodestar figure is $2,347,200. The requested award in this case, approximately $10 to $12.5 million, yields a lodestar multiplier in this case of 4.2 to 5.3 and an hourly rate of $2,130.20 to $2,662.75.

I must be cautious of placing too much weight on these numbers lest I "re-introduce[ ] the problems of the lodestar method." Task Force on Contingent Fees, 25 REV. LITIG. at 471. Also, the cross-check results do not "supplant the court's detailed inquiry into the attorneys' skill and efficiency in recovering the settlement...." *In re Cardinal Health*, 528 F.Supp.2d at 764. Nevertheless, the lodestar figure and multiplier reveal that the requested fee rewards Class Counsel more than generously relative to the time expended on this matter. Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee. *See Goldenberg*, 33 F.Supp.2d at 439 n. 6; *see also In re Microstrategy, Inc.*, 172 F.Supp.2d at 789 (reducing fee award from a requested percentage, which would have resulted in an award approximately four times the lodestar figure, to a percentage that resulted

in an award 2.6 times the lodestar figure); *In re Cendant*, 243 F.3d at 742 ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (internal quotations and citations omitted); *but see In re Cardinal Health*, 528 F.Supp.2d at 768 (finding that requested fee amount with a lodestar multiplier of 7.89 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel."). The lowest potential multiplier in this case is at the high end of the reasonableness range. A fee resulting in such a high relative multiplier is unreasonable in light of the lesser complexity and risk of this action. Further, the hourly rate of $2,130.20, which is significantly above the market rate, suggests that the attorneys would experience a windfall with the receipt of such an award. This windfall is especially high considering that the estimated hours expended includes one thousand future hours spent on the risk-free administration of the Settlement Agreement.

## I. An Attorneys' Fee Award of 20% of the Common Fund is Reasonable

■ Having considered the factors discussed above in light of the totality of the circumstances of this case, **I FIND** that a fee award of 20% of the Settlement Fund is reasonable compensation for Class Counsel. This very large fee is supported by Class Counsels' effort, efficiency, collegial spirit, and, very importantly, by the achievement of a sizable benefit for the class. It is further supported by the minimal objections by Class Members to the Settlement Agreement, all but one of which were withdrawn. Also, this fee returns a lodestar multiplier between 3.4 and 4.3 which is closer to the middle of the range considered reasonable by courts. This reduction also reflects the one thou-

sand hours expended in this case for the administration of the approved settlement. Such work does not involve the same risk as litigation or settlement negotiation and therefore a higher rate of payment designed to compensate such risks is not warranted.

As to public policy, the fee remains high enough to encourage future class action representation and efficient and collegial conduct by attorneys. It is also likely that this fee, though reduced from the requested amount, will appear excessive to non-lawyers and encourage negative public perceptions about the legal profession. A 20% fee, though not ideal, strikes a closer balance between the public policies implicated by attorneys' fee awards in class actions.

The most significant factor affecting my determination, however, is the high incidence of actual, direct notification in this case and the resulting near-unanimous approval of the attorneys' fee provision by the Class Members. The rest of the factors alone, as relevant as they are to the determination of a reasonable attorneys' fee, are not enough to convince me that a fee of this magnitude is "reasonable." Even reduced, the fee that I approve in this case remains extremely high. Nevertheless, I am reluctant to deviate too greatly from a fee amount approved by virtually all of Class Counsels' clients. Such approval shows that at least from the Class Members' perspective, the requested fee is reasonable for the services provided and the benefits achieved by Class Counsel. The Class Members' implicit agreement to pay the requested fee, together with the other factors above, support the conclusion that a 20% fee award is reasonable in this case.

## IV. Costs

Class Counsel have also requested reimbursement of $91,883.50 in out-of pocket expenses. Costs that are "reasonable in nature and amount, may be reimbursed from the common fund." *In re Microstrategy*, 172 F.Supp.2d at 791. Costs should "reflect a reasonable amount of expenditures for a case of [its] magnitude," *Strang*, 890 F.Supp. at 503, and also "bear a reasonable relationship to the time and effort expended and the result achieved." *In re Microstrategy*, 172 F.Supp.2d at 791. "[C]osts should be borne equally by the beneficiaries of the class action." *Strang*, 890 F.Supp. at 503.

A large portion of the costs in this case were incurred in the retention and compensation of experts and consultants who assisted the evaluation of the leases and the defendants' accounting practices. Such experts were necessary to the thorough development and effective settlement of the Class Claims, especially in light of the complicated subject matter underlying this case. Other expenses in this case included the expenses routinely charged to legal clients. **I FIND** that costs in the amount of $91,883.50 reflect a reasonable amount of expenditures for a case of this magnitude and bear a reasonable relationship to the time and effort expended in this matter.

## V. Incentive Award

■ Class Counsel have also requested awards in the amount of $25,000 for each of the Class Representatives: Gary P. Jones and Shirley Jones; H. Dotson Cather, Trustee of Diana Goff Cather Trusts, and McDowell Pocahontas Coal Company, Inc. Incentive awards are routinely approved in class actions to "encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook." *Muham-*

*mad*, 2008 WL 5377783, at *9. For example, in *In re Lorazepam & Clorazepate Antitrust Litigation*, 205 F.R.D. 369, 400 (D.D.C.2002), the court approved $25,000 to each of three class representatives. Those representatives "provided in-house counsel, fraud investigators, and pharmacy benefits managers to aid in the prosecution of this case, whose efforts included investigating, negotiating, responding to discovery demands, attending meetings, coordinating with other in-house counsel, and directing class counsel in settling the case." *Id.*

Incentive awards were also granted in *Cullen v. Whitman Medical Corporation*, 197 F.R.D. 136 (E.D.Pa.2000), which was a case brought by a class of students against a vocational school that fraudulently misrepresented the education they would provide to their students. The class representatives sought an incentive award in the amount of tuition paid, which ranged from $2,000 to $10,000. *Cullen*, 197 F.R.D. at 145, 152. In that case, two of the class representatives had initiated individual law suits which led to the filing of the class action, and one intervened on behalf of an entire subclass. Other representatives produced materials, helped prepare documents, and actively participated in discovery. *Id.* at 145–46.

In *Muhammad*, the court awarded a $5,000 incentive award to the class representative out of the settlement proceeds of $700,000. 2008 WL 5377783, at *10. The court noted that the class representative "attended numerous meetings with counsel and counsel's staff .... assisted in drafting discovery responses, and consulted with counsel regarding critical aspects of the settlement." *Id.* at *9.

Serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing. In this case, however, the court has received no evidence of the class representatives' participation in this case. The record in this case does not indicate that the class representatives were deposed or produced any personal documents. *Cf. In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357–58 (N.D.Ga.1993). Furthermore, Class Counsels' history of the case suggests that the damages and claims were developed through the efforts of Class Counsel and experts analyzing extensive records provided by the defendants rather than with the participation of the class representatives. Accordingly, **I FIND** that the requested incentive award over-compensates the plaintiff representatives. An award of $15,000 is sufficient to reward the class representatives in this case for enabling the pursuit of this matter on behalf of the class.

## VI. Method of Payment

█ The parties in this case have requested that the Costs of Litigation, including the incentive awards, be assessed as a percentage rather than a lump sum amount. A percentage, the parties explain, will be easier to deduct from the Settlement Payments provided to each class member. A percentage assessment for this money, however, poses its own difficulties. For instance, the precise amount in the settlement fund is not available and therefore any percentage award will also be imprecise and may result in an assessment of costs that is greater or less than the amount identified by Class Counsel.

Nevertheless, because a percentage deduction for costs will be more convenient than a lump sum, and because both parties agree that a percentage assessment is preferable, I will comply with the parties' request. As discussed above, $91,883.50 in litigation costs and $45,000 aggregate incentive awards are reasonable and should

be deducted from the Settlement Fund and Payments. The total amount, $136,883.50, is about 0.33 % of the low estimate of the Settlement Fund, $41,740,031.00. **I FIND** that an assessment of 0.35% of the Settlement Fund will be a close approximation of the calculated costs. Further, because the amount of the assessment will not precisely reflect the Costs of Litigation, including the incentive awards, the assessment should first reimburse the attorneys' litigation expenses, and the remainder should be equally divided among the three Class Representatives.

## VII. Conclusion

Based on the foregoing, I **ORDER:**

1. Attorneys' fees in the amount of twenty (20) percent of the Settlement Fund be paid to Class Counsel.

2. Costs of Litigation in the amount of 0.35% of the Settlement Fund be paid as follows:

   a. $91,833.50 to be paid to Class Counsel as reimbursement for litigation expenses;

   b. the remainder to be distributed equally among the three Class Representatives, Gary P. And Shirley Jones; H. Dotson Cather, Trustee of Diana Goff Cather Trusts; and, McDowell Pocahontas Coal Company, Inc.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.